UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELYN WHITE,

        Plaintiff,                    CIVIL ACTION NO. 09-14631

  vs.                                  DISTRICT JUDGE NANCY G. EDMUNDS

MICHIGAN DEPARTMENT OF       MAGISTRATE JUDGE MONA K. MAJZOUB
HUMAN SERVICES,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant Michigan Department of Human Services's motion for summary judgment on Plaintiff Jacquelyn White's Title VII retaliatory, race, and sex discrimination claims.[1] (Dkt. 50.) The Court has been referred this motion pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 4.) The Court has reviewed the pleadings, dispenses with a hearing, and now issues this report and recommendation.[2]

**I.    Recommendation**

---

[1] On June 14, 2010 this Court issued its report and recommendation on the original defendants' motions to dismiss/motions for summary judgment. (Dkt. 22.) That report and recommendation dismissed the majority of Plaintiff's claims, leaving only Michigan Department of Human Services as a defendant and Title VII retaliatory discrimination and race, color, sex discrimination claims. (*Id.*) On August 5, 2010 the report and recommendation was adopted over Plaintiff's objections. (Dkt. 26.)

[2] Plaintiff filed two responses to Defendant's motion for summary judgment. (Dkt. 62, 63.) Defendant has moved to strike Plaintiff's second response. (Dkt. 65.) The Court has reviewed Defendant's motion and agrees that Plaintiff's second response is redundant; the Court therefore grants Defendant's motion to strike pursuant to Federal Rule of Civil Procedure 12(f)(2).

Because Plaintiff has failed to produce circumstantial evidence to establish a prima facie case of retaliation or race and sex discrimination, and she has not shown that Defendant's legitimate reason for its employment decisions concerning her were pretext, the Court recommends granting Defendant's motion for summary judgment and dismissing this case.

**II.    Report**

    **A.    Facts**

The Court focuses on the facts that allegedly support Plaintiff's case–those facts related to her retaliation allegations and the facts related to her race and sex discrimination claims. Among her allegations, she focuses on an incident involving two white males receiving walled offices while she only received a cubicle to establish that her supervisors racially and sexually discriminated against her. She also loosely alleges that a "white woman" was granted a transfer request while she was not. She additionally alleges that her supervisors retaliated against her for reporting a co-worker's suspect allegations and for filing her January 29, 2009 EEOC (Equal Employment Opportunity Commission) complaint

The Court briefly reviews her relevant work history and then discusses the facts that touch upon her allegations.

Plaintiff worked, in various positions, for the State of Michigan from1978 until her termination in 2009. (Def.'s Mot. for Summ. J., Ex 1, Pl.'s Dep. at 6.) In January, 2006 Plaintiff began working for Oakland County, Child and Family Services. (*Id*. at 40.) From January until September, 2006 Plaintiff's supervisor was Mel Kaufman. (*Id.*) Plaintiff stated that things had gone "fine" with Mr. Kaufman as her supervisor. (*Id*. at 43.)

2

In September, 2006 Dorothy Butler became Plaintiff's manager. (Pl.'s Dep. at 46.) Sometime during Plaintiff's early relationship with Ms. Butler, Ms. Butler assigned Deborah Garnett to be Plaintiff's new manager. (Pl.'s Dep. at 50-51.) Plaintiff's issues arose while working with these two women. (Pl.'s Dep. at 56.)

Plaintiff alleges that she was discriminated and retaliated against because of the cubicle incident–where she had to move to a cubicle when several others did not have move; because she was not allowed in certain meetings; because of with whom she was required to clean the kitchen; and because she was not granted a transfer request.

### i. The cubicle incident

Plaintiff bases her sex and race discrimination claims on an incident that required her to move from an office to a cubicle when two white male employees where given offices to work in. This incident occurred in April, 2008. (Pl.'s Dep. at 69.) The two white male employees were Scott Orrell and Ray Brashaw.

### a. Scott Orrell

Scott Orrell was part of the administrative staff of Margaret Warner, the then-Oakland County DHS (Department of Human Services) Director. (Warner Aff. at 2, 3.) Ms. Warner stated that Mr. Orrell's direct supervisor was Darrell Parks, the County Administrative Services Manager. (*Id.*) She further stated that Mr. Orrell was "specially assigned to work with Dorothy Butler on a part-time basis[.]" (*Id.*)

Ms. Butler added that, because Mr. Orrell was a part-time employee, she provided him with an office space that others could use when he was absent. (Def.'s Mot. for Summ. J., Ex. 9, Butler

Aff. at 3.) She also stated that she wanted him close to her office "because of the nature and intensity of the child protective and related staffing issues that he worked on." (*Id.*)

Plaintiff acknowledged that Mr. Orrell was part-time and worked for a different manager. (Pl.'s Dep. at 106.) Plaintiff also acknowledged that other workers used Mr. Orrell's office at times, including herself. (*Id*. at 148.)

### b. Ray Brashaw[3]

Ms. Warner stated that Ray Brashaw was an Administrative Services Manager who supervised administrative services for field operations in two Pontiac, Michigan office locations (Baldwin Road and Saginaw Road). (Warner Aff. at 2.) Ms. Butler added that Mr. Brashaw was assigned an office near hers because he was assisting her, in his capacity in administrative services, in managing the office space, building space, and other emergent staffing-related issues. (Butler Aff. at 3-4.)

Plaintiff stated that Mr. Brashaw was a full-time worker, who was classified at the same level as Plaintiff, and that he had the same managers as Plaintiff (Ms. Butler and Ms. Garnett). (Pl.'s Dep. at 148.) Plaintiff stated that Mr. Brashaw was left in charge of the office and at times even the entire building. (*Id*. at 109.) Plaintiff acknowledged that the managers could have thought that Mr. Brashaw was a highly competent individual. (*Id.*) Plaintiff recognized that Mr. Brashaw was an administrative services person and Plaintiff was a departmental analyst. (*Id*. at 242.) Plaintiff further acknowledged that he had a different job description. (*Id*.)

---

[3]Plaintiff acknowledged that she did not mention the Ray Brashaw office issue in her EEOC complaint. (Pl.'s Dep. at 162.) The Court addresses Mr. Brashaw to show that, even if Plaintiff's EEOC complaint put Defendant on notice of Plaintiff's similarly-situated issue with Mr. Brashaw, Plaintiff still would not succeed on her race and sex discrimination claims.

### ii.     Other incidents and Plaintiff's EEOC complaints

Plaintiff has alleged that several other incidents demonstrate that Defendant retaliated and discriminated against her.

On March 13, 2008 Plaintiff wrote a memo to several people discussing a certain analysis she performed. (Pl.'s Dep. at 78.) Plaintiff sent this memo to Mses. Dianna Pyles, Deborah Frey, Sharon Campbell, Ellington, and Hellenberg. (*Id*. at 79.) Plaintiff stated that these individuals were all in management positions. (*Id.*) Plaintiff listed Ms. Garnett's name first. (*Id*. at 80.) Listing Ms. Garnett's name first apparently created some confusion as to who sent the email. (*Id*.) Plaintiff stated that she received a reply email from Ms. Garnett. (*Id*. at 80-81.) In that reply, Ms. Garnett thanked Plaintiff for sharing the analysis, but also requested that Plaintiff not send out a memo to any of the managers in the office without having a discussion with Ms. Garnett first. (*Id*. at 81.)

Plaintiff has also based her discrimination claims on a kitchen cleaning incident and not being invited to any meetings. (Pl.'s Dep. at 137.)

Plaintiff recounted that Ms. Garnett ordered her to the kitchen while others were eating their lunches and said "you're going to clean this kitchen up." (Pl.'s Dep. at 145-46.) Plaintiff stated that she never cleaned the kitchen, because she never ate in the kitchen. (*Id*. at 146.) From the record, it appears that Plaintiff and her co-workers were all assigned to clean the kitchen on a rotating schedule.

Plaintiff stated that she was "treated differently because [she] was excluded from everything." (Pl.'s Dep. at 109.) Ms. Garnett stated that she did not invite Plaintiff to management meetings because Plaintiff was not a manager, she was a Departmental Analyst. (Def.'s Mot. for Summ. J., Ex. 11, Garnett Aff. at 2.)

On March 21, 2008 Plaintiff filed a grievance with the State of Michigan for issues she had with her department, and specifically with her supervisors. (Def.'s Mot. for Summ. J., Ex. 12.) In this grievance Plaintiff stated that on March 21, she became informed that her supervisor, Ms. Garnett, had revealed her name as an informant "who reported a fellow co-worker who ha[d] made violent threats toward the office and co-workers." (*Id.*) Plaintiff wrote that, as a result of the disclosure, she became uncomfortable and felt as if she were in an unsafe position." (*Id.*) She requested that she be removed from the "direct supervision of [Ms.] Garnett." (*Id.*)

On April 21, 2008 the State of Michigan, Department of Civil Service, responded to Plaintiff's grievance. (Def.'s Mot. for Summ. J., Ex. 16.) The Department stated that Plaintiff acted in the way required of her by departmental policy by reporting a threat. (*Id.*) But the Department found that policy required that "the individual being investigated also has to be advised of who made the report in order to adequately and accurately recall the circumstances and context of the allegedly threatening activity." (*Id.*) The Department stated that the fact that Ms. Garnett revealed Plaintiff's name does not, in and of itself, create a hostile work environment. (*Id.*)

In June, 2008 Plaintiff wrote an email to the then-current DHS Director concerning several complaints she had with Oakland County. (Def.'s Mot. for. Summ. J., Ex. 17.) She complained about not being moved while a "white male analyst maintain[ed] a full wall to ceiling office." (*Id.*) She also stated that a white woman asked to be moved from a department and she was granted that request, but Plaintiff was not allowed to be assigned a new supervisor. (*Id.*) She complained about cleaning the kitchen. (*Id.*) She primarily complained about those people with whom she had to clean the kitchen–a storekeeper and a part-time analyst. (*Id.*) She stated that she was not the storekeeper's equal. (*Id.*)

6

On October 20, 2008 Plaintiff wrote a "summary statement," in which she stated that she was treated differently from how Mr. Orrell was treated. There is no indication to whom this statement was sent.

On January 29, 2009 Plaintiff filed her first complaint with the EEOC. (Def.'s Mot. for Summ. J., Ex. 15.) In it, Plaintiff marked boxes that she was basing her complaint on race, sex, age, and retaliation discrimination. (*Id.*) She stated,

> Since approximately March[,] 2008, I have been subjected to unfair and disparate treatment from my department manager. The unfair treatment consisted of, but was not limited to, being removed from my office[,] told to run things by [my manager] first, ordered to clean the kitchen[,] and not invited to meetings. I have complained about many things, filed grievances about this department manager to the Director of DHS and have requested to be removed from under her supervision, to no avail. During the last retirement proposal the manager stated to me, "that it would be in your best interest to retire." My white male counterpart is not subjected to this treatment, nor has he been removed from his office. Further, I am aware of a white female who requested to be removed and it was allowed.
>
> I believe that I am being discriminated and retaliated against for complaining because of my race, black, and gender, female[,] in violation of Title VII of the Civil Rights Act of 1964[.]

(*Id.*)

On July 8, 2009 Plaintiff was terminated from the State of Michigan's employment. (Def.'s Mot. for Summ. J., Ex. 24, McCune Aff.) She was separated from the State's employment because she exceeding her allotted medical leave–more than six months of leave in five years. (McCune Aff. at 2.) The policy that governed Plaintiff's leave did not allow her to take a medical layoff. (*Id.*) So when the State found that Plaintiff had exceeded her medical leave, it sent her a letter to report to work on July 7, 2009 and warned her that she would be separated from the State's service if she did not return on that date. (*Id.*) Plaintiff did not return to work on that date. She was then sent a letter

7

indicating that she had been separated from the State's employment. Plaintiff admitted exceeding more than six months leave in a five year period. (Pl.'s Dep. at 206.) Plaintiff stated that the policy changed while she was on medical leave; she also stated that she agreed that no race or sex animus inspired the change and that Defendant had the power to change the policy. (*Id*. at 207-08.)

On May 4, 2010 Plaintiff filed a second EEOC complaint. In the complaint, Plaintiff alleged that Defendant had retaliated against Plaintiff by terminating her because she filed her January 29, 2009 EEOC complaint. (Def.'s Mot. for Summ. J., Ex. 20.) Plaintiff alleged that she "was subjected to a hostile work environment, discharged, and retaliated against based on [her] filing of an EEOC charge[.]" (*Id*.)

### B.   Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly

8

support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis[4]

---

[4] Defendant argues that the majority of Plaintiff's claims lie outside of her EEOC complaint. (Def.'s Mot. for Summ. J. at 10.) The Court agrees and therefore address only those issues raised in her EEOC complaint. As for her retaliation claim after her EEOC complaint–that she was terminated from employment because she filed the EEOC complaint, the Court addresses it, although Plaintiff cannot ultimately succeed on that claim, either. *See Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 427-28 (6th Cir. 2007) ("We do not consider the allegations . . . .because they were not raised in [the plaintiff's] EEOC charges[.]") *See also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (quoting *Weigel v. Baptist Hops. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002)) (A plaintiff's "judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."). "Although retaliation claims are often excepted form the exhaustion

### 1. Title VII retaliation claims

Plaintiff's retaliation claims are very roughly alleged. The Court separates Plaintiff's retaliation allegations into two groups: 1) those allegations that Plaintiff included in her January 29, 2009 EEOC complaint and 2) those allegations involving Plaintiff's alleged retaliation after she filed that January 29, 2009 EEOC charge.

Title VII prohibits an employer from discriminating against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(b). "Title VII [also] prohibits an employer from discriminating against an employee because the employee 'has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Weatherby Federal Exp.*, No. 09-6036, 2012 WL 29205, at *11 (6th Cir. Jan. 5, 2012) (citing 42 U.S.C. § 2000e-3(a)) (insertions in *Weatherby*).

Courts analyze Title VII retaliation claim under the *McDonnellDouglas/Burdine* framework when "claims are supported by circumstantial evidence."[5] *Weatherby*, 2012 WL 29205, at *11 (citation omitted). A plaintiff can establish a prima facie case of retaliation by showing that: "(1) she engaged in [a protected activity]; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal

---

requirement when they arise after an EEOC charge is filed, retaliation claims based on conduct that preceded the charge must be included in that charge." *Taylor v. Donahoe*, 09-2527, 2011 WL 6275913, at *2 (6th Cir. Dec. 15, 2011) (citing *Abieta v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998)).

[5]Plaintiff has made no allegations of direct evidence of retaliation.

connection between the protected activity and the adverse employment action or harassment." *Id*. (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (insertions in *Weatherby*.).

If the plaintiff makes out a prima facie showing, then "the burden of production of evidence shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Weatherby*, 2012 WL 29205, at *11 (citation and quotation marks omitted). If the employer articulates such a reason, then the plaintiff is required to "demonstrate by a preponderance of the evidence that the proffered reason was mere pretext for discrimination." *Id*.

The plaintiff can demonstrate pretext by offering evidence that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for termination, or (3) the reason offered was insufficient to explain the employer's action." *Id*. at *9 (citation omitted).

At all times, the burden "of persuading the trier of fact . . . remains" with the plaintiff. *Id*.

### a. Retaliation included in the January 29, 2009 EEOC complaint

Again, in her January 29, 2009 EEOC complaint, Plaintiff alleged that

> Since approximately March[,] 2008, I have been subjected to unfair and disparate treatment from my department manager. The unfair treatment consisted of, but was not limited to, being removed from my office[,] told to run things by [my manager] first, ordered to clean the kitchen[,] and not invited to meetings. I have complained about many things, filed grievances about this department manager to the Director of DHS and have requested to be removed from under her supervision, to no avail. During the last retirement proposal the manager stated to me, "that it would be in your best interest to retire." My white male counterpart is not subjected to this treatment, nor has he been removed from his office. Further, I am aware of a white female who requested to be removed and it was allowed.

> I believe that I am being discriminated and retaliated against for complaining because of my race, black, and gender, female[,] in violation of Title VII of the Civil Rights Act of 1964[.]

Defendant argues that Plaintiff has failed to show that any of her activities leading up to the January 29, 2009 EEOC complaint were a protected activity. (Def.'s Mot. for Summ. J. at 14.) Defendant additionally argues that any of the actions Defendant took against Plaintiff for her exercise in the supposed protected activity were not materially adverse.

The Court has thoroughly reviewed the record and has found only one definite instance where Plaintiff complained about race or sex discrimination, a Title VII protected activity, that falls within the 300 days limitation period in her January 29, 2009 EEOC complaint.[6] This instance occurred in Plaintiff's June, 2008 email to the DHS director, in which she complained that she was being treated differently than a white male and white female. (Def.'s Mot. for. Summ. J., Ex. 17.) This is the only instance in which Plaintiff has explicitly referenced race and sex and being treated differently. Although there was an October, 2008 "summary statement," there is no indication that anyone received this statement.

Assuming that Plaintiff's email to the DHS director constituted protected activity, Plaintiff's retaliation claims included in the January 29, 2009 EEOC complaint still fail, for two reasons. She first has failed to show that she suffered any adverse employment action. She alleges that she was not allowed to have a new supervisor, was not allowed a walled office, and was not allowed into meetings. These allegations do not constitute an adverse employment action. *See Watson v. City of*

---

[6] *See Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 387, n 2 (6th Cir. 2009) (reh'g and reh'g en banc den.) (stating that, "the applicable limitations provision of Title VII bars recovery for employment discrimination that occurred more than 300 days before [the plaintiff] filed an EEOC charge.")(citing 42 U.S.C. § 200e-5(e)(1)).

*Cleveland*, 202 F. App'x 844, 877 (6th Cir. 2006) (holding that the plaintiff did not establish that she suffered an adverse employment action when she lost responsibility for several investigations, was excluded from meetings, and did not receive a raise.) (citing *Burlington N. and Santa Fey Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006)). In *Watson*, the Sixth Circuit held that the alleged adverse actions "would not dissuade a reasonable employee form invoking the protections of Title VII." *Id*. Here, the Court finds that the alleged actions taken against Plaintiff would not dissuade a reasonable employee from invoking Title VII protections.

Even if this Court were to proceed to the fourth element of the prima facie case, Plaintiff has failed to establish that element as well, because she has not shown a causal connection between Plaintiff's email to the DHS director and Ms. Butler's or Ms. Garnett's treatment of her.

The Court therefore finds that Plaintiff has not established a prima facie case of retaliation for the retaliation included in the January 29, 2009 EEOC complaint; Defendant is entitled to summary judgment on these claims.

### B. Retaliation after the January 29, 2009 EEOC complaint

Plaintiff also loosely alleges that she was retaliated against after she filed her January 29, 2009 EEOC complaint. Plaintiff appears to allege that she was retaliated against because she had unsuccessful interviews with Sharon Jackson, Margaret Warner, and Susan Hull. (Def.'s Mot. for Summ. J. at 16.)

Plaintiff applied to be Susan Hull's administrative assistant. (Garnett Aff. at 2; Hull Aff. at 2.) Mr. Garnett stated that she was on the interview panel that did not select Plaintiff to be Ms. Hull's assistant. (Garnett Aff. at 2.) Both Ms. Garnett and Ms. Hull stated that Plaintiff was not

13

hired because another applicant scored higher on the interview criteria score sheet. (*Id.*)

In February, 2009 Plaintiff applied to be Ms. Warner's administrative assistant. (Warner Aff. at 3.) Ms. Warner stated that she did not "know of any of [Plaintiff's] race or sex discrimination claims . . . when she interviewed for a position as [her] administrative assistant . . . in February[,] 2009." (*Id.*)

Plaintiff stated that she did not know how much Ms. Jackson or Ms. Warner knew about Plaintiff's January 29, 2009 EEOC complaint. (Pl.'s Dep. at 268.)

For these unsuccessful interviews, Plaintiff has failed to establish a prima facie case of retaliation. She first has failed to bring forth evidence the Mses. Jackson, Warner, or Hull knew about Plaintiff's January 29, 2009 EEOC complaint. And even if these women did know about the complaint, Plaintiff has failed to establish the causal connection between the EEOC complaint and the failure to hire. And even if she were to establish the causal connection, Defendant has offered a legitimate, nondiscriminatory reason for not hiring Plaintiff–she did not score as high on her test as the other candidates; Plaintiff has not shown that this reason was pretext.

Because Plaintiff has failed to establish a question of fact on her post-January 29, 2009 EEOC complaint retaliation claim, Defendant is entitled to summary judgment on this claim.

### 2. Title VII race and sex discrimination claims[7]

---

[7]The Court is skeptical of Plaintiff's race and sex claims, given the following testimony:

Q: Okay. In fact, when you talk about retaliation generally, when it comes from Deborah Garnett you're not talking about race retaliation or sex discrimination or anything like that, are you?
[Plaintiff]: No.
Q: And, in fact . . . you never raised a claim against Deborah Garnett that she was . . . sexually discriminating against you or racially discriminating against you[.]

Plaintiff has brought race and sex discrimination claims against Defendant. Courts also analyze race and sex discrimination claims under the *McDonnellDouglas* framework.[8] *Alexander v. Ohio State Univ. Coll. of Soc. Work*, 429 F. App'x 481, 486-87 (6th Cir. 2011) (citation omitted). To succeed on a Title VII race discrimination claim, a plaintiff must establish a prima facie case of discrimination by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than a similarly-situated, non-protected employee. *Id.* at 487 (citation omitted). If the plaintiff makes that showing, then the

---

A: No.
(Pl.'s Dep. at 104.)

Q: And so do you think that Dorothy Butler discriminated against you on the basis of sex?
A: No.
(Pl.'s Dep. at 104.)

Q: So is there anything that makes you think that Dorothy Butler didn't like black people?
A: Well, that comes up with the seating. I can't say I know that - - I feel that she discriminated against me.
Q: On the basis of race?
A: When it came to seating accommodations, yes.
[]
Q: Now, what do you mean by seating accommodations?
A: I mean that the - - there were two Caucasian males, both business administration, same class, pay, and level, being Scott Orrell and Ray Brashaw, who maintained in closed offices like this one, and I was moved several times under Dorothy Butler to different cubicles. And they that [] the - - the statement they gave is because of it was - - space was at a premium. However, if space was at a premium, why didn't they have to move.

(*Id.* at 106-05.)

[8]Courts analyze sex discrimination claims under the same framework. *See Corel v. CSX Transp., Inc.*, 378 F. App'x 496, 500-501 (6th Cir. 2010). Here, the Court uses the *McDonnellDouglas* framework because Plaintiff has not presented any direct evidence of retaliation or discrimination. *See* Pl.'s Dep. at 279 ("No, I don't have any direct evidence. I have circumstantial evidence that I was treated differently.").

defendant must produce, as in the retaliation context, a "legitimate, non-discriminatory reason for the adverse action." *Id.* The plaintiff then has to show that the proffered reason is pretextual. *Id.* (citation omitted). "Pretext may be demonstrated by showing by a preponderance of the evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the action], or (3) that they were insufficient to motivate [the action]." *Id.* (quoting *Manzer v. Diamons Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (insertions in *Alexander*.).

An adverse employment action is a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Steward v. New Chrysler*, 415 F. App'x 632, 640 (6th Cir. 2011) (citation omitted). The Sixth Circuit has stated that a

> materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (citation omitted).

For a plaintiff to be deemed "similarly-situated" to another employee, that employee must be similar in all "relevant" aspects to the plaintiff. *Corel v. CSX Transp., Inc.*, 378 F. App'x 496, 502 (6th Cir. 2010) (citation omitted). Those "relevant aspects" include dealing with the same supervisor, having been subject to the same standards, having engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treater of them for it." *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Here, Plaintiff has not established a fact issue that being removed from her office, told to run things by her manager first, ordered to clean the kitchen, not being invited to meetings, and the denial of her request to transfer are adverse employment actions.[9]

With regard to the office, running things by management, and cleaning the kitchen issues, she has not established that she was treated differently than a similarly-situated non-protected member. Plaintiff offers Mr. Orrell and Mr. Brashaw, both white males. Neither Mr. Orrell nor Mr. Brashaw is similarly-situated. Mr. Orrell was a part-time worker who had a different supervisor. He is not similar in all relevant aspects. Plaintiff cannot meet her burden with Mr. Orrell. Mr. Brashaw was also not similarly-situated to Plaintiff. Although Plaintiff stated that Mr. Brashaw was at her level and that the two shared a supervisor, she acknowledged that he a different title (administrative services manager) and different duties (he was left in charge of the entire building, at times) and a different job description. (Pl.'s Dep. at 109, 242.) Mr. Brashaw therefore is not a similarly-situated individual.

Regarding the meetings issue, Plaintiff has not brought forth evidence to establish that similarly-situated non-protected individuals were allowed to the meetings while she was not. Even if she could establish that element, Defendant has offered a legitimate nondiscriminatory reason for not inviting Plaintiff to the meetings. Defendant alleges that Plaintiff was not invited to the meetings

---

[9]Neither party focuses on Plaintiff's request to transfer argument. But here, as in the retaliation section, Plaintiff's argument fails. She has not demonstrated that the failure to transfer was an adverse employment. And even if she were able to, Defendant has offered a legitimate non-discriminatory reason for denying her request–there was nowhere to transfer Plaintiff–that Plaintiff has not shown as pretext. The Court therefore cursorily address that issues in this footnote.

because Plaintiff was not a manager. (Def.'s Mot. for Summ. J., Ex. 11, Garnett Aff. at 2.) Plaintiff has not brought forth any evidence, aside from conclusory allegations, that this reason was pretext.

All of Plaintiff's sex and race claims therefore fail.

### D.     Conclusion

For the above-stated reasons, the Court recommends granting Defendant's motion for summary judgment and dismissing this case. All pending motions therefore are rendered moot.

### III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:  January 26, 2012                     s/ Mona K. Majzoub
                                                     MONA K. MAJZOUB
                                                     UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

     I hereby certify that a copy of this Report and Recommendation was served upon Jacqueline White and Counsel of Record on this date.


Dated: January 26, 2012                       s/ Lisa C. Bartlett
                                                     Case Manager